Good morning, Your Honors. Stanley Friedman. May it please the Court, Your Honor. I represent the appellee and the cross-appellant, Charlie Hagege. Just to commence, Your Honor, we weren't sure whether I should commence. I'd filed the first opening brief, but the government technically is the appellant in the case. So whatever would please the Court, I would be happy to commence, or if the Court would prefer the government's counsel to commence. Your Honor, respectfully, the government's cross-appellant claim to the sentence would be irrelevant if we didn't address the conviction issue. So I recommend that we proceed in the order. The cross-appellant brief addresses a number of issues. The first issue I'd like to discuss, if it would please the Court, would be the Crawford-slash-confrontation issue. As the letter to the Court just this last Friday, on December 2nd, it's an open question as to whether the Confrontation Clause requires the government to make a custodian of business records available for cross-examination. That was in the government's letter to the Court just this last Friday. Respectfully, I would suggest to the Court that this is actually a very good vehicle, at least from the defense standpoint, for requiring that the government present such a custodian. Your Honor, I know I have an uphill battle here, but I'll... Are you aware of any appellate court that's ruled that it's within Crawford? No, Your Honor. Well, you want us to pioneer, then, I guess. Is that the idea? Yes, Your Honor. But pioneering generally doesn't pay, you know? In this case, Your Honor, the custodian of... the individual who testified at trial regarding the documents knew nothing of the documents. There were records that were presented from the bank in Luxembourg and the bank in Israel. Was that par for the course with that type of testimony, with records production testimony? Your Honor, most of the cases deal with records from a public agency. In this case, there was a stack of documents more than a foot high. Many of the documents could not have been authenticated by the individual who actually authenticated the documents. Well, I mean, like, take a simple case like you have record documents in medical cases where custodian comes, doesn't know the first thing about medicine, but the custodian of these very, you know, detailed medical journals and records and everything. Clerks of court are record custodians occasionally. Many of them aren't even lawyers, and they produce legal and testify. These are, you know, record documents in the clerk's office. Well, in this case, the witness didn't speak French, and some of the records were in French. And the witness didn't speak Hebrew, and some of the records were in Hebrew. And yet, very significantly, a significant portion of the trial was the prosecutor putting documents on an overhead projector and the witness just reading them. And I was left to try to basically cross-examine an overhead projector because I wasn't able to cross-examine the declarant to say, well, how were these records prepared, and why are there records that are clearly not bank records? They were translations prepared by the Department of Justice that were part of the authentication process. Why were there records that were partially in Hebrew and partially in English that were just recently generated, but yet the declaration says that they were, that the documents were prepared at or near the time of production? These were things that I was prevented from cross-examining the declarant or the witness about because the government was permitted to ask the questions that it wanted to ask in terms of the documents, but in terms of how the documents were prepared, what was the witness knew nothing about. And so, to that extent, the defendant was significantly deprived of his right of confrontation in the case. But, you know, we're dealing with reliability. Is there any reason to think that any of these records were not authentic? Your Honor, it was the... You got them from the bank and the... It was the defendant's view that the declarations were perjurious. Because, for example, in terms of the Israeli bank records, there was a prior declaration indicating that the Israeli bank had turned over all the documents. And as it turned out, it was later the government's position that the Israeli bank had not turned over all the documents. Oh, so you have that, and that's something you can present to the jury. Well, the witness knew nothing about the authentication and the... Couldn't you cross-examine them? He knew nothing about how the documents... You can make your point to the jury about all these issues by simply asking the questions until the court cuts you off. Well, and to some extent... You know nothing about this. You don't know. You can't explain this, can you? No. You can't explain this, can you? Why couldn't you do that? To make the same point. To some extent that we could. On the other hand, given the amount of time that was devoted to the trial, to reading these documents, the fact that to some extent we were able to cross-examine the witness about he didn't know exactly how the records were prepared was actually just, I think, a footnote in the jury's consideration. I think it seriously affected the authentication issue of the documents and shouldn't have been permitted. Additionally, many of the documents were turned over about 22 days before the trial, and that would not be enough time in order for the defendant to be able to prepare any sort of meaningful cross-examination for documents that were prepared in Israel and prepared in Luxembourg. You asked for a continuous? No, Your Honor, I did not. The defendant was in custody, and it was his desire to go forward. What was the nature of the objection you made at the trial court to the admission of those documents? It was both on foundation and on hearsay, and the court overruled both. The authentication was addressed pre-trial, although it was preserved during the course of the trial. That would be the Crawford issue. We also objected based on hearsay because some of the documents, while they could possibly be viewed as admissions of the defendant, were other documents that just were not admissions of the defendant. How about your argument? I don't want to cut you off on anything, but your final official request argument that doves into this type of argument. I'd be interested to hear your position on that, since the precedents are somewhat scant in that area. Is that the Section 3292 issue, Your Honor? Yes, Your Honor. Actually, I realize that I think I perhaps omitted my strongest argument out of the briefs. The government's analysis, and it's contained in, I think, page 9 of its brief, speaks of events that occurred after the five-year period within which the statute of limitations would normally expire. And actually, all those occurrences are completely irrelevant. The significant dates, I would submit to Your Honor, and I did not put in this brief. Frankly, Your Honor, I just thought of it this morning, but perhaps it's one of my better arguments, is that on September 24, 2002, the government received all the records that it had sought from Luxembourg and all the documents that it had sought from Israel. The initial request was for Israel to produce documents, but to not certify the documents until closer to the trial period. Thus, as of September 24, 2002, it obtained all its documents. On January 27, 2003, that was the five-year mark. The count one, my argument only applied to count one, because I don't think the statute of limitations argument applied to count two. Count two was the secretion of assets and the bankruptcy. The commencement of that statute of limitations would have been at the discharge of the bankruptcy. That was much later. But count one related to the false statement that was made, the five-year mark for statute of limitations would have been January 27, 2003. That's the cutoff for the Court's consideration as to whether the three-year extension applies or the six-month extension applies. In the government's brief, interestingly, but I don't think it's relevant, it talks about conduct that it engaged in after January 27, 2003 in trying to attempt to get the records. I would suggest respectfully to the Court that that's actually irrelevant. What Congress said in the statute, and it's on page 24 of my brief, is that to the extent that the government is in possession of all the documents it's seeking, prior to the time of the five-year mark, the maximum period of extension is six months. To the extent that it's not in possession of all its documents, then the maximum extension is three years. Should this Court find that the three-year benchmark applies, my argument falls apart. But to the extent that the Court finds that the six-month extension applies, then count one was time barred. The government's argument is that, well, we didn't receive the certification until just a few weeks before trial. My response — What's wrong with that argument? They deferred the receivings. They didn't want it yet. My response to that, Your Honor, is that it would violate the separation of powers doctrine in the Constitution, because it's the government then, rather than the legislature or the Court, that determines the applicable statute limitations. The statute says that it's either six months or it's three months. For final action? For final action, yes, Your Honor. Well, why should — yeah, but why should we base the timing of final action on the subjective opinion of a foreign in power? Well, Your Honor, it's both based on the subjective opinion of the foreign power, but also based on the opinion of the government. Because in this case, it was the United States government that said, please defer action on the certification until we're closer to the trial period. And so the foreign government, the government of Israel, complied with the request, and it produced the documents, but it did not produce the certification. Well, I thought the government did that because it would get the documents quicker. They want them for discovery, sure. That was the reason that was placed in the letter, Your Honor. On the other hand, certainly the documents could have been produced — oftentimes documents are produced in both civil and criminal cases initially, and then the certification comes later. But here the government specifically asked the government of Israel to withhold the certification of the documents until some latter period. And by doing that, it controlled as to whether the six-month time period would apply or the three-month time — I'm sorry, the three-year time period apply. It wasn't the district court Judge King who made the decision. It wasn't Congress. It was the government. By specifically making that request, if the court were to go by the government's argument, it has made the decision as to whether the statute of limitations should be extended by six months or the statute of limitations should be extended by three years. Well, is that within the contemplation of the statute that the government is going to request these when they're needed? Well, Your Honor, the statute actually contemplates final action. Final action, yeah. But wouldn't basing the time of final action on a letter response by a foreign government be contrary to our holding in Bishel, which pins final action up or down on each item requested in an official request? My recollection, Your Honor, of the Bishel case is that in that case the government had asked for both documents, and I think perhaps witness interviews, but the certification. And so the distinction that the defense would draw, the cross-appellant here, is that final action in the Bishel case would have required certification. And here the defendant's argument is that final action is when the government of Israel complies with whatever request the government of the United States has made. I see. Okay. And the request was to produce the documents. The government of Israel produced the documents. And it produced the documents before January 27, 2003. So to the extent that the government of Israel complied with the government of the United States' request before January 27, 2003, there was final action before that date. Well, yeah, but you're pinning final action on the subjective opinion of a foreign state. The final action, as far as the government of the United States is concerned, is final before July 25. And I would respectfully disagree based on the United States government's request. To the extent that documents were produced, at least in the interim stage, the final action was taken. So, for example, if trial had been delayed by a year, the government would so argue, and it had only made the request a few weeks, as it did here shortly before the government of Israel that determined the final action. It was the United States government. And respectfully, we contend that that's a separation of powers issue. The harm, I mean, if the government might take the position, well, the defendant may be right, but he was convicted of these other counts. So count one was the false statement in the bankruptcy. Count two was the secretion of assets. And the other counts were the Social Security counts, which were the tail end of the case. And the government might argue, well, then what's the harm? Because he's still convicted of count number two. And even under the guidelines, I believe they would be calculated similarly. The harm is that it gave the government a jumping board for calling the defendant in the case a liar. The opening argument was filled with references to the defendant being a liar. He's lying. He lied to the court. He lied to the trustee. There's seven instances in the opening statement. It was a very emotionally charged opening statement. And in the closing statement, there's a reference to him being a liar. Normally, I would have objected to that. Because to some extent, the cases say that if the government's counsel argues that the defendant's a liar, she's vouching. It was a different assistant U.S. attorney at the case. It wasn't the one before Your Honors. But there are cases that say the assistant U.S. attorney is vouching. But if there's some kind of factual basis for alleging that the defendant's a liar, then it's perhaps not vouching. It's part of the government's case. Here it was presented that the defendant was a liar. And that was only proper, I believe, because count one remained in the case after the defendant had filed pretrial a motion to dismiss that count. All right. Is that another issue you want to talk about? Yes, Your Honor. I'll move on very quickly. In terms of the double jeopardy mistrial issue, Your Honor, I would just offer that the declarations of the government did not answer the question as to whether the assistant U.S. attorney and the FBI agent knew that the witness was going to inject the issue of pornography into the trial. And the declarations were very cleverly crafted. We would contend that they specifically say that the witness did not use the word pornography during the six hours just a few days before his testimony. The issue isn't whether he used the word pornography. The issue is whether adult-oriented businesses were discussed at all. In terms of the jury instruction issue, the fact that the court advised the jury that the defendant had previously been convicted of a felony completely eviscerated his purpose in not testifying in the trial. And by his not testifying in the trial, the court refused the proffered instruction on advice of counsel. And the only reason he didn't have the advice of counsel instruction was because he didn't testify. The reason he didn't testify was because he didn't want the jury to add his conviction. And in the end, the jury heard that he had his conviction. But the government's position is they didn't have to have an evidentiary hearing as to whether or not this was prosecutorial misconduct because the case was going in nicely for the defendant. There was no facts to indicate that this was an intentional trap that was being set for the defendant. So the district judge did not abuse his discretion by not having an evidentiary hearing to pursue the question further. And I don't think I can answer that question. I don't think properly the government can either. I think there should have been an evidentiary hearing, and I should have been had spoken to the FBI agent or the assistant U.S. attorney about the issue of adult-oriented businesses. And to that extent, I don't think the district court had the type of information that she needed in order to make that type of evaluation. And I note my time, Your Honor. Did she have a curative instruction? No, Your Honor. What she did was after she didn't actually read the instruction we were getting to it, she had published the instructions to the jury without disclosing it. And as she turned the page and saw it, she told the jury, oh, I see that there's a mistake in this packet. This jury instruction does not apply to this case. I'm not positive. I think she offered to me a curative instruction. I'm not positive. But my position was that we couldn't unring that bell of prejudice. The final issue, Your Honor, and this actually relates to the government's brief, is to the extent that the court does remand the issue, I would respectfully ask the court to, for sentencing only, I would respectfully ask the court to indicate that it's for a full remand. I have a remanded case to the same district court judge, and we're litigating the issue as to whether the remand is a limited remand or a full remand. And I see from the government's brief that it's... Are you talking about Emily? Yes, Your Honor. Yes, Your Honor. I see from the government's brief that the government also agrees that it should be a full remand. I believe that's their position. And just to avoid additional litigation in the trial court, I would ask that if that's the court's position that the court would explicitly state it in the opinion, it would be going back to the same district court judge. Yeah, all right. Well, she's a learned judge. She'll figure it out.  Thank you so much. I appreciate the court's time and attention. Thank you. May it please the court, Ilana Ardson on behalf of the United States. Let me begin with the issues pertaining to the foreign documents. With respect to the statute of limitations, the district court did not clearly err in finding that there was no final action in First, the dispositive response as to all of the documents requested for the entire time period was not received until December. The initial production, which was made in September of 2002, only covered a portion of the period of time requested by the government. The government subsequently made a further request to Israel saying, we haven't received documents for the entire time period. We want you to comply with the documents for the entire time period. The government of Israel did indicate that it thought it had complied, but that turned out to be erroneous. And in December of 2003, they discovered, yes, in fact, you were correct. We were wrong. There are additional accounts. We, for some reason, did not provide those, but we are providing them now. So on that separate and independent basis, completely apart from the certification, the district court did not clearly err in finding that there was no final action until December of 2003. What's your argument about the, you're doing an end run around the statute and contrary to the separation of powers clause that you're, in effect, can extend the statute on the statute? Well, the separation of powers argument was only raised in the reply brief, so we didn't have a chance to brief it. But the district court, first of all, did not accept the interpretation of the MLAT request, and this court should not either. Because the request, and if you look, for example, at each page in the MLAT where there is a request for records, starting at excerpt of record 197, there's a brief description of the evidence sought, the prosecutor requests certified copies of bank records, then the prosecutor requests certified copies of entry and exit records of a particular witness. Then later in the MLAT request, again, there's a very detailed description of the records requested, certified records, and then there's a very detailed description of how exactly to go about the certification procedure. What the MLAT did, and this I understand from the Office of International Affairs is fairly standard language, is made an accommodation in the interest of cooperation, which, you know, you have to recognize that these requests are made pursuant to a treaty, but nonetheless we still have to work with another government, another culture that may have a very different legal system than ours, a very different banking system than ours. They may not have an understanding of why the certification is important. This court has even recognized in its case law recently in DeGeorge, for example, that this process of receiving a response to an MLAT and receiving certification may take an inordinately long time. But that's not true with Israel, is it? Well, my understanding from the attorney at the Office of International Affairs who handles the Israel desk is that there is a problem of limited resources. There is one attorney in the police department who is assigned to the execution of MLATs because in Israel the police are tasked with the execution of these requests, and that person has limited resources and we have to work within the limited resources that we have, and that their method of certifying records is not necessarily the same as ours. Right, but they have a very sophisticated legal system. You say we don't know what the other countries are, but Israel is different, I think. They cite Ninth Circuit cases all the time. They do. First of all, Your Honor, I would suggest that the rule that should apply under 3292 shouldn't depend on which country is at issue. You raise the argument. I think the question is whether in some fashion there was an attempt here to manipulate the rules, and what the government did was a very reasonable request. We need these documents. We need certified documents. This Court recognized in Bishel that the reason final action takes place at certification is because the documents are worthless if they can't be admitted into evidence. Nonetheless, we also recognize that the certification process takes a long time, and while you are getting the documents certified, please send them to us in any form so that we can continue our investigation. That's what the government requested in this MLAT. It wasn't a request, don't certify until we certify you? There is nothing in the record that the defendant can point to where the government said don't certify. To the contrary, after receiving the uncertified documents in March of 2003 and again in September of 2003, twice before the indictment, the government requested certification. Didn't get it yet. After the indictment was returned in December, finally the government was able to get the certification. And again, as Bishel recognized, sometimes there is a process of negotiation and sort of continued discussion that goes on in obtaining the certification. There is a procedure beyond merely having an employee call some records and ship them over that has to be complied with under the laws of each country in order to be able to certify that these documents are the records that are required according to the certifications in Section 3505 under the laws of that country related to perjury. All right. But let's get back to it. Let's take a hypothetical. Let's say that the initial request did not contain a certification requirement and the foreign government complies with the requirement. Isn't that a final action? In those circumstances, it may well be because the MLAT is what controls. Doesn't it get back to the determination of the scope of the initial request in this case? If, as you contend, the scope of the initial request included a requirement of certification, then it's a natural extension. If it didn't, then perhaps the final action is what was produced the first program. And that's correct. And you can't go on, in other words, by asking for supplemental information, go on to extend the statute of limitations. We agree that you have to look at what the proper interpretation of the original request is. And the district court found, correctly, we would submit, that in this case, the MLAT did request certified documents. What it also requested is that while you're going through the procedure of obtaining those documents, please send us the uncertified documents so that we can get on with our investigation and, you know, we need those documents. You know, the concern that's... I mean, I understand all the underlying policy reasons, but once the government says, well, we're going to accept uncertified documents or that's all we want at this point, it may or may not have waived some of your rights on that. Your Honor, I think that the concerns that come into play here concerning prosecutorial manipulation are adequately protected in a number of ways. This is not a separation of powers problem because there is a lot of judicial oversight of this proceeding. For example, as this court discussed in sort of a different context in DeGeorge, you know, the government has to make a motion to the district court, supported by evidence, to suggest that, you know, there's a reason to believe that these documents are in the foreign country and they've been requested. We have to, you know, provide the MLAT. There's a great deal of supporting evidence. And the district court is not just a rubber stamp. It then makes a determination that there is a proper basis on which to suspend the statute of limitations. And Congress has made a determination that all of these concerns about delay and diligence and so on are properly taken into account in the statute by saying there's going to be an outer limit of three years. And if the final action takes place before the statute otherwise would have run, six months. But that's the outer limit. And so any sort of concern about manipulation or delay and so on is accounted for in the statute. And essentially that's what this court said in Bichelle. We don't really see that there's a requirement that the government act diligently because Congress has set a three-year outside limit and that is sufficient. So there's really nothing on this record to suggest in any way that the government attempted to manipulate this to its advantage. If there was such evidence, perhaps it should be delved into. But there just isn't any evidence like that on this record. What there is is evidence that in the world of, you know, international relations, you know, we have to, we can't merely stand on the fact that we have a treaty and you have to do this. We also have to find ways to work with other countries just as, you know, other countries are then going to be making these same requests of us and, you know, the government is going to want some direction as to help us prioritize what you need today and what, you know, you don't necessarily need today. If there was some suggestion that that had occurred for the purpose of delay, then we might have an issue. But the government here consistently made requests for certification. Would you mind, I know you're, if you're concluded with that portion, would you mind turning to double jeopardy issues? You know, the question on double jeopardy here really is limited to whether the court should have held an evidentiary hearing. There doesn't seem to be any dispute that there was no basis in the current record to suggest in any fashion that the prosecutor intentionally goaded the defense into moving for a mistrial. And I think we need to begin by looking at the standard that the Supreme Court set in Oregon v. Kennedy because that is a very high bar for the defense to have to meet. It rejected a standard of mere, let's say, prosecutorial overreaching, and instead it set a very narrow window focused on the prosecutor's intent so that double jeopardy can only be invoked when the prosecutor's conduct was intended to provoke the defendant into moving for a mistrial. And this court has pointed out, for example, in Lunn and McCoy, that that narrow window doesn't even mean just because the defendant had no realistic choice. It has to focus on the prosecutor's intent and whether the prosecutor intended basically to sabotage and abort the trial. There was absolutely no evidence before the district court that could possibly lead to that inference. The defense's argument is we should have been allowed to engage in a fishing expedition to try to develop such evidence. Not much of a fishing expedition because the affidavit didn't... The affidavit seems to be fairly carefully drawn. It doesn't say that they didn't talk about the adult entertainment business. It was very focused on the word pornography. It says we never discussed pornography and he never told us he took the deposition of somebody who had been in the pornography business with the defendant. And at the hearing, the prosecutor elaborated, you know, we didn't discuss that business under any other term. We didn't discuss adult-oriented businesses or anything else of that sort. But that in itself is not the issue because the issue is not even merely whether they discussed this. The issue is whether the prosecutor intentionally, knowingly, elicited that testimony in order to provoke a mistrial. So even if the witness were to say, oh, yeah, we had some discussion about it, and even if the prosecutor was negligent in not directing the witness with sufficient direction not to break the law, not to bring up this topic, even if all that were true, at most maybe you would have overreaching. That doesn't in any way suggest that the prosecutor intentionally elicited this information in order to... Well, let's assume hypothetically that if there were a hearing, the evidence came out that the prosecutor said, well, get this in if you can. I can't ask you that directly because they'll object. But if you want to blurt it out, I can't stop you. Well, I mean, just assume. I gather under your theory you say, well, that's still not enough because the prosecution was certainly guilty of perhaps some misconduct, but it wasn't aimed at trying to provoke a mistrial. Is that your argument? Well, I think there are two separate issues. Would it be enough if we had a declaration, an affidavit, something to that effect, would that be enough to require an evidentiary hearing? I would say it probably would. And at the conclusion of that hearing, would the decision be different as to whether the prosecutor had intentionally go to the defense into moving a mistrial? Again, I would argue that even under cases like Lund and McCoy, which have found that even when the government's case was deteriorating, that does not necessarily mean that the government intentionally provoked a mistrial because there are downsides, too, to having to retry the case when you are not entirely certain that your witnesses are going to be coming back, the defense has already had a preview of your case, and so on and so forth. I think the issue we have to focus on here is did the district court abuse its discretion in denying an evidentiary hearing to try and develop something that would challenge a completely unrebutted record? How do you ever do that without an evidentiary hearing? Well, first of all, there are a lot of ways that the defense could have done that. It could have called up Keats and gotten a declaration from him. The defense didn't do that. And to the extent that the government had discussions with Mr. Keats prior to receiving the defense's motion requesting that we not have contact with him, the declarations that the government submitted indicated that what Mr. Keats had said to us is, you know, I would sign a declaration saying no, I didn't have any discussion like that. He represented the Polo people, right? But the witnesses are not owned by any party. This is not a government informant. Just as a kind of a routine checklist, when witnesses are prepared by the government, are they cautioned about blurting out things like this? You know, I remember that the police used to, going back into the 50s, 60s, you'd get a police officer on the stand and he asked a question, would you know so-and-so? Oh, yes, I know him. I've busted him a half a dozen times in the past. We're good friends. I mean, that just comes up. It happened to me once. Does it take advantage of you? So does the government tell these witnesses, just answer the question, don't volunteer information, don't say anything, blurt anything out that's going to be pejorative as far as the defendant is concerned? Your Honor, I can't... You've got a guy, Keats. He represents one of the creditors, right? Correct. There's a lot of money involved, so he's probably ticked off. Your Honor, I can't speak to the practice of every single lawyer in our office. I can say that... I can say that when I was trained many years ago, and as far as I know in the current trainings, lawyers are given direction and training about how to prepare a witness and to encourage the witness to focus on the questions and not add extraneous information and that witnesses need to be directed as to those areas that are not proper, that they can't raise. That's certainly a part of our office's training and the understanding, as far as I know, of lawyers in our office, that you do need to work with your witness on what are the proper areas that can be discussed and what are areas that can't be raised. And even if you're asked a question by the defense that may seem to call for something improper, pause, wait for an objection, see... You've never heard a witness prep by saying, well, I can't ask you that directly, but if you said X, it happens. Again, I think we have to go back and look at the record here and whether there is any basis in the record for the district court to have had a genuine doubt about whether that happened. My only question to you is, I gather what your argument is, even if the worst had happened, that the witness had been coached, the evidence showed hypothetically that the witness had been coached to blurt out something about the pornography business. That wouldn't be enough. We have to show an intent to create a mistrial. I mean, that's what your argument is. It doesn't matter how bad it gets, you've just got to show that there's some objective evidence that the intent was other than to commit misconduct and prejudice the defendants. How can you ever show that? Well, if the witness had actually been coached in that manner, it seems to me that would be some evidence that there was some sort of deliberate attempt maybe to abort the case and cause a mistrial. I think this Court on other occasions has also looked at other remedies. For example, if a prosecutor improperly coaches a witness to try to inject improper testimony in order to prejudice the case, then maybe there are appropriate sanctions that should be taken against that prosecutor. But what we have to look at here is whether there's a double jeopardy problem. And the double jeopardy problem is limited to a narrow situation, which is just not found on these facts. But they aren't to the double jeopardy issue quite yet. They just say, please give us an evidentiary hearing so the District Court can determine for itself whether or not the facts indicate that there was an improper motive. There's enough on the record to provoke that. That's a slightly different question. It is a different question, and the question is whether the District Court abused its discretion in concluding that there was just not anything there to raise a genuine doubt in its mind. And we have cited a number of cases from other circuits because there doesn't seem to be a case from this circuit in exactly this posture, looking at the Oregon v. Kennedy situation. But we've cited a number of cases in which the courts have all agreed, you know, the court has discretion to determine whether to hold an evidentiary hearing, and that depends on whether there's some genuine issue to be explored. And here there was just no basis to believe that there was a genuine issue, because everything about the prosecutor's conduct that the court had been able to observe suggested that there was no intentional provocation. There was no basis from the prosecutor's declaration to indicate it. The FBI agent gave a similar declaration about what had occurred, and there was nothing from the other side. There was nothing from Mr. Keats. And even if Mr. Keats had said we discussed it, the point I was trying to make is, you know, the defense says, well, maybe we could have gotten the witness on the stand. He would have said we had a discussion. And I don't think there's any basis for the court to find genuine doubt there, because if that was the case, they could have asked Mr. Keats for a declaration. Perhaps. I think there's a little doubt there must have been some discussion. I mean, just from reading this record, unless it's because usually you'd have a sweeping declaration. This never came up before. What it says is they didn't use the word pornography or deposition. That's pretty narrow. And even in response to the court, I'm not suggesting that you may not be right. I'm just saying that this record would tend to indicate that. I mean, it doesn't convince me that they didn't discuss it. I think that's one of the reasons why this court has to defer to the district court in these sorts of matters, because this is a district judge who presided over this case for many, many months. There were many, many pretrial motions. There was a great deal of contact between the court and all of the parties. Yeah, but when the trial goes on for many, many, many months, there's kind of a disinclination to see it blow up. But the court here granted a mistrial. That wasn't the issue. The issue is whether the district court had some basis to believe that the prosecutor had intentionally done that, despite the fact that everything the court saw showed the contrary. And the only fact that was possibly advanced here is that maybe there was some discussion. Even though the prosecutor represented during the hearing, we didn't have any discussion about pornography under any other name. The court chose to, that's what the prosecutor said, not in the declaration, but at the argument on the motion where there was some discussion about, you know, is the declaration carefully crafted? The prosecutor said, you know, we didn't discuss pornography under any euphemism, under any other name. We didn't talk about, I didn't know about this deposition of, you know, a witness, a person who had supposedly been in the pornography business. And the district court accepted that representation, which it could have done after an evidentiary hearing, but the court accepted that representation. There was absolutely nothing on the other side. And, you know, in cases, for example, like Wentz in the Fourth Circuit and the Second Circuit case of Pavliovis, you know, there, the court was found not to have abused its discretion when it had presided over the case, it observed the prosecutor, it observed the proceedings. In Pavliovis, we had affidavits. In Wentz, the court said, you know, there was no contrary evidence that was presented by the defendant and it was not an abuse of discretion not to hold a hearing. Well, when you just look at the colloquy or the questions, prosecutor, what else did you do, Mr. Keats, in order to try to collect your judgment, witness, in terms of the investigation or was there more that you did in terms of the investigation? Well, the investigation, we, in terms of depositions, we took a significant number of depositions of various parties who may have been involved in some of these transactions. I recall there was one gentleman who was a partner of Mr. Hagegi who had set up a pornography business with Mr. Hagegi. So you're kind of turning this prosecutor, sort of turning the witness loose. If your question is going to whether that sort of conduct on the part of the prosecutor was, you know, overreaching or negligent or improper in some fashion, still the overwhelming evidence here shows that there was no intent to provoke a mistrial. The government's case was proceeding smoothly. It didn't want to have to bring these witnesses back. It vehemently argued against a mistrial and the district court was in a position, unlike any of us here, to observe the prosecutor, to observe the proceedings and to make that determination. So I would submit that even if the court could have made the opposite determination, the standard is abuse of discretion. The court didn't abuse its discretion because there was no genuine doubt here about the prosecutor's intent. Let me just take a brief moment to discuss the Crawford issue. I see my time is over, but I did want to pick up on a point made by Judge Thomas that there really doesn't seem to have been a confrontation clause objection per se here in the district court. Primarily there were objections based on hearsay and authentication. So this doesn't seem to be the appropriate place to come up with a new rule because there certainly would not be plain error, but in any event, the business records themselves clearly are not covered by Crawford. Crawford itself said business records are not covered and in Cervantes Flores, this court also noted that business records are not covered. We're only talking here about the certification. That's the only possible document that might have any Crawford implications. And that document was not introduced at trial. It was not introduced to the jury. It was only used, and we're talking about the Section 3505 certification, it was only used for the district court to make the preliminary finding under Federal Rule of Evidence 104 that these documents were admissible. So preliminarily the government in a footnote in its brief noted that these confrontation clause issues really are not relevant to the Rule 104 issue in the first place, so we don't even reach it. But even if the court were to reach it, we pointed out in our Rule 20HA letter that this court has recently, since the filing of the briefs, ruled on two Crawford cases that look at various kinds of certifications. And even though it has left open the question of business records, the concerns that underlie those cases are exactly the same concerns here, and they are even sort of further manifested. In Wyland, which had to do with the certification of criminal records from another state, the court said requiring custodians of public records from all the different municipalities and states to have to basically travel all over the country to verify these records really would present a huge logistical challenge, and there would be virtually no gain to the truth-seeking process, and therefore rejected the claim there. And that would certainly be true here, you know, manifold, because now we're talking about foreign witnesses. Similarly in Cervantes Flores, which was looking at a certificate of nonexistence of record in illegal reentry cases, the court said, you know, the business records are not under Crawford, and the certification really closely resembles the business records. Moreover, the certification is addressing some documents that were preexisting to the litigation, and just don't really have any resemblance to the police interrogation and the types of examples that were given in Crawford. So I think all of that reasoning would apply in this case as well, and if the documents are not covered by Crawford, the two certifications which we would submit they're not, then we go back to the pre-Crawford law, and in Miller, this court upheld section 3505 against a confrontation clause challenge, finding that there was sufficient reliability based on the Ohio v. Roberts standard. And I think the Miller court also made a note which is important here, and that is, you know, in upholding the reliability, the court said, you know, if there really is a case where there is a genuine concern about the records and the reliability of the records, it's always possible for the defense to depose, seek to depose the custodian. And that wasn't done here. And from that, we can infer that there wasn't really this genuine concern or that the defense decided not to take advantage of it. But as Miller indicated, there is that option if there really is a genuine concern. Here, there was no genuine concern. Section 3505 was fully complied with. And for that reason, there is no Crawford problem. I would just point out very briefly with respect to the government's cross-appeal that we agree that there should be a remand for full resentencing, not merely limited amyline remand, because this is a case where the record clearly shows that the district court would have imposed a different sentence had it engaged in judicial fact-finding. This is a case just like Defendant Fanfan in the Booker case, where the district court limited the quantity of drugs to what was found by the jury in Fanfan. Here, the district court limited the offense level to only the facts found by the jury and said, if I could engage in judicial fact-finding, I would find a much higher offense level. We now know that judicial fact-finding is proper. Therefore, the sentence was unreasonable and should be remanded for full resentencing. And unless there are any further questions, I thank you for the extra time. Your Honor, in terms of the double jeopardy issue, just to address that, and then the statute of limitations issue, I think the Court did commit error when it did not conduct an evidentiary hearing. I think there was a strong sense that the court had a strong suspicion that that issue about pornography and adult-oriented business was injected by the Assistant U.S. Attorney. Prior to that time, there was a number of matters which, I contend, were improperly injected into the trial. One of them included Mr. Keats going up to the jury stand with his briefcase, and during the course of his testimony, without any invitation, he opened up his polo shirts to the jury so that they could see what one of these counterfeited polo shirts looked like. Judge Cooper, I had moved for a mistrial based on that. Judge Cooper faulted me for not bringing that as a motion in limine. In my years as an Assistant U.S. Attorney and as a defense lawyer, I've never seen anybody do that, and the judge had denied it. I haven't raised that issue. But I don't think that this Assistant U.S. Attorney should be gauged by what the usual Assistant U.S. Attorney does. In this case, the prosecutor not only was very aggressive in the case, but mounted a personal war against me in terms of initially trying to move to disqualify me, which was denied by the judge. And at the hearing where the judge ruled on that, she announced that she was going to serve a grand jury subpoena upon me personally. For all my records going back many years relating to civil cases and this criminal case that I represent in front of Mr. Hajaj, and asked the court whether the court would ask me if I would accept it by fax, I indicated that I would. If I would accept the grand jury subpoena by fax, I indicated that I would. The government faxed me the subpoena Friday at about 4.15 in the afternoon. The Assistant U.S. Attorney knew that for religious reasons I'm never in the office Friday at 4.15 in the afternoon because of the approaching Jewish Sabbath. I received the subpoena Monday morning. On Tuesday I filed a motion to quash the subpoena. It called for my appearance on the following Wednesday. So it gave me basically two days notice. The next day I dropped everything. I filed a motion to quash. That morning Judge Cooper granted my motion to quash the subpoena for which I will forever be grateful to her. The government filed a motion for reconsideration that afternoon. Judge Cooper denied that. Later that afternoon an FBI agent appeared in my office. When I had already indicated I would accept any grand jury subpoena by fax and went throughout the whole suite indicating to people that he was an FBI agent and he was looking to serve me with a grand jury subpoena. I again filed a motion to quash that. I also filed a motion to dismiss for outrageous government conduct. The judge granted the motion to quash indicating that it violated the defendant's right for preparation of trial but denied my motion to dismiss for outrageous government conduct. So to some extent if the court were to consider what the average Assistant U.S. Attorney would do, I would respectfully suggest that that standard not be applied in this case. I had indicated that I would accept any kind of grand jury subpoena by fax. That was not an invitation for an FBI agent to show up in my office. I appreciate that. Apparently there was some bad blood to say the least. But if we get to the legal issue, none of that really indicates an intent to blow up the trial. That's the difficulty. It's a puzzle with this area of law but I understand the distinction that the government if they had a rebuttal would say well that's true but there are remedies for misconduct and double jeopardy has a different standard and you have to show an intent to cause a mistrial not just to engage in some mischief at trial. Respectfully I think to some extent the record shows that there was perhaps a reckless disregard of the defendant's rights which would lead to a mistrial but I think the record is factually unclear as to whether that court or this court reviewing the matter could decide whether the subsequent trial was barred by the double jeopardy clause. What do you make of the transcript of the hearing which I just reviewed? And in fact Ms. Klein does say that she's certified that she didn't discuss pornography, adult related entertainment business in any form. Yes, Your Honor. And the court accepted that. Anything wrong with that? My response, Your Honor, is two-fold. First, it deprived me of the opportunity of questioning the prosecutor because normally prosecutors do not become a witness in the case. There was a strong incentive by the prosecutor to blame Mr. Keats which is what she did. My experience of life is that if I questioned Mr. Keats there's a strong possibility that he would blame the prosecutor not wanting to be faulted for the cause of a mistrial and so I wasn't able to cross-examine the prosecutor. I wasn't able to cross-examine the FBI agent who I actually would have preferred to speak to rather than the assistant U.S. attorney given the circumstances. And also there was no way for me to speak with Mr. Keats because he was an adversary to Mr. Hajaj, hated him. I was involved in the civil case where they were pursuing him for this. So he's represented by counsel and you couldn't? No, I could have called Mr. Keats and I've spoken with him in the past but Yes, Your Honor. To quote a different district court judge, Mr. Hajaj has humiliated Mr. Keats because Mr. Keats at least at that point was never able to collect anything on his judgment. And I didn't contact Mr. Keats. Actually my request was that neither party contact Mr. Keats and in response to that the government did contact Mr. Keats but then did not submit the declaration that they had prepared in draft. So in a sense it was the worst of all worlds. Mr. Keats had been contacted, well to some extent it was mooted because the court did not order my evidentiary hearing. Had obtained at least a draft declaration from Mr. Keats as to what he said but then elected not to submit the declaration to the court. So it was somewhere in the government's file but I've never seen it and it never made it to the court even as an in-camera submission. In terms of the statute of limitations argument I would just like to call the court's attention to the it's page 198 of the excerpts of brief. It's the on page 198 it's the second paragraph and it indicates that the only thing that the government is seeking is the records and that the certification will be sought sometime later. I respect what the Assistant U.S. Attorney spoke about but I think much of what she spoke about is really not an issue. I've never made a contention that the government manipulated the timing of anything but I don't think that's the standard either. I think the statute of limitations is just a harsh bar. If you miss the statute of limitations you've missed the statute of limitations. The issue is whether it was extended by six months or three months. The district court order did not indicate whether it was told by six months or three months and it was for the district court to make that decision and for this court to do it on review. It's a de novo review and I would respectfully suggest that they were eight months late in filing the claim as to count one. And on that I would submit to the court unless the court has any additional questions. Thank you so much. I'm just curious. The counsel talked about Ms. Kline and this bad blood. Is there anything to that? I mean why in the middle of trial would they want to subpoena defense counsel? Your Honor, with all due respect I have no idea what that refers to. There were a lot of proceedings in this case. Did you know that Ms. Kline issued a grand jury subpoena to counsel? I did not know about that and I will certainly find out about it and I will provide information to the court. I don't know anything about it. There is a very large record in this case. I apologize but I don't remember everything that happened in all of the proceedings in this case. So I don't know about that but I will find out and I will let the court know. Just speaking for me, when a case has bad blood it's nice to see people treat each other civilly in front of us. So I appreciate both of you treating each other with respect. Thank you, Your Honor.
judges: Pregerson, Cowen, Thomas